UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
CAROL SCHWASNICK and PETER SCHWASNICK,

                        Plaintiffs,

                                                    MEMORANDUM & ORDER
            -against-                               08-CV-4759(JS)(ARL)

GINNY FIELDS, individually and in her
official capacity, THE TOWN OF ISLIP, THE
TOWN BOARD, PHIL NOLAN, individually and in
his official capacity, CHRISTOPHER D.
BODKIN, individually and in his official
capacity, STEVEN J. FLOTTERON, individually
and in his official capacity, JOHN H. EDWARDS,
individually and in his official capacity,
GENE PARRINGTON, individually and in his
official capacity, WILLIAM ROWLEY,
individually and in his official capacity,
JOHN NORRIS, individually and in his official
capacity, GREGORY CLIFTON, individually and
in his official capacity, GEORGE SCHIMPH,
individually and in his official capacity,
TOWN OF ISLIP ZONING BOARD OF APPEALS,
ROBERT QUINLAN, ESQ., individually and
in his official capacity, ROBERT CICALE, ESQ.,
individually and in his official capacity,
WALTER W. FIELDS, individually and in his
official capacity, STACEY WILLIAMS, individually
and in his official capacity, MICHAEL WILLIAMS,
individually and in his official capacity,
THOMAS PARTRIDGE, individually and in his
official capacity, and WILLIAM C. FIELDS,
individually and in his official capacity,

                        Defendants.
--------------------------------------------X
APPEARANCES:
For Plaintiffs:               Judith N. Berger, Esq.
                              28 East Main Street
                              Babylon, New York 11702

For Defendants:
The Town of Islip,            Erin A. Sidaras, Esq.
The Town Board,               655 Main Street
Islip Zoning Board            Islip, New York 11751
of Appeals

Phil Nolan, Christopher D.        Rosenberg Calica & Birney LLP
Bodkin, Steven J. Flotteron,      100 Garden City Plaza, Suite 408
John H. Edwards, Gene             Garden City, New York 11530
Parrington, William Rowley,
John Norris, Gregory
Clifton, George Schimph,
Robert Cicale, Esq., Robert
Quinlan, Esq.

William C. Fields and             Susan M. Connolly, Esq.
Ginny Fields                      300 Motor Parkway, Suite 205
                                  Hauppauge, New York 11788

SEYBERT, District Judge:

Plaintiffs Carol Schwasnick and Peter Schwasnick (collectively "Plaintiffs") commenced this action against the Town of Islip, the Town Board, and the following Defendants individually and in their official capacities: Phil Nolan, Christopher D. Bodkin, Steven J. Flotteron, John H. Edwards, Gene Parrington, William Rowley, John Norris, Gregory Clifton, George Schimph, Robert Quinlan, Esq., Robert Cicale, Esq., (collectively "Individual Town Defendants"), Town of Islip Zoning Board of Appeals, Walter W. Fields, Stacey Williams, Michael Williams, Thomas Partridge, and William C. Fields on November 24, 2008. Plaintiffs' Complaint alleges causes of action based on 42 U.S.C. §§ 1983, 1985(3), abuse of power/office, and the fourth, fifth, and fourteenth amendments. Plaintiffs also allege state law claims based on harassment, negligence, battery, and property damages.

Pending before this Court are Defendants' motions to dismiss all claims for failure to effectuate proper service pursuant to 12(b)(5) of the Federal Rules of Civil Procedure and 4(m) of the Federal Rules of Civil Procedure, and failure to state a cause of action pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court GRANTS Defendants' motions.

BACKGROUND[1]

This case arises out of a dispute between Plaintiffs, Carol Schwasnick and Peter Schwasnick, and their neighbor, Defendant Ginny Fields ("Fields"), an Assemblywoman for the Town of Islip. (Compl. ¶ 51.) Problems between the neighbors commenced on or about April 20, 2006, when Plaintiffs complained to the town about garbage on Fields' property. (Id.) From then on, Fields annoyed the Plaintiffs, especially while Plaintiffs waited at a school bus stop with their children. (Id. ¶ 53.) For example, Fields drove past the bus stop at high speeds, put nails and other objects in the road to purposely endanger the Plaintiffs, and verbally told Plaintiffs that they could not use the bus stop. (Id. ¶¶ 53, 56, 58–60.)

---

[1] Plaintiffs' Complaint alleges the following facts, which the Court presumes to be true for the purposes of this motion. The Court must presume all facts stated in the Complaint to be true when deciding a motion to dismiss. Here, the facts referred to are those included in the Amended Complaint filed on November 24, 2008.

Plaintiffs complained to the Town, and Town of Islip Code Enforcement Official, Greg Clifton ("Clifton"), informed Plaintiffs that they had "every right to use th[e] corner as a bus stop." (Id. ¶ 118.) Additionally, the assistant to Phil Nolan ("Nolan"), the Town of Islip Supervisor, told Plaintiffs that "everyone has the right to use the [bus stop] and no one may block or control it." (Id. ¶ 94 (emphasis in original.)) Eventually, however, Fields allegedly convinced the school Superintendent to move the bus stop. (Id. ¶ 101.)

In August 2007, the Town of Islip reissued Fields' rental permit even though it was allegedly not in compliance with the Town Code. (Id. ¶ 120.) Plaintiffs claim that allowing illegal renters on the Defendant's property decreased the value of Plaintiffs' property. (Id. ¶¶ 68-70.) Plaintiffs complained to the Town about the permit violation, and Nolan told Plaintiffs that Fields "would be treated 'like anyone else.'" (Id. ¶ 114.) Clifton also told the Plaintiffs to "hang in there." (Id. ¶ 119.) The Town, however, never intervened. (Id. ¶ 118.)

One month later, Fields informed the Town that Plaintiffs' bushes were a sight obstruction. (Id. ¶ 100.) Consequently, Fields and another unknown town employee stood on Plaintiffs' front lawn and looked at the bushes. (Pls.' Opp'n 21.) In January 2008, the Town issued a Notice of Violation to

Plaintiffs. (<u>Id.</u> ¶¶ 96–99.) Town Inspector, Defendant John Norris ("Norris"), also told Plaintiffs that their driveway was too close to the property line, and thus required a permit. (<u>Id.</u> ¶ 130.) Plaintiffs state that six other driveways in the neighborhood were close to the property line, but the property owners were never issued Notices. (<u>Id.</u> ¶ 132.) Plaintiffs answered the Notice and resolved the issue. Plaintiffs were not required to alter their property in any way. Nevertheless, Plaintiffs assert that they suffered some damage from this violation in the form of time and costs.

Plaintiffs commenced this action on November 24, 2008, setting forth various causes of action against the Defendants pursuant to 42 U.S.C. §§ 1983 and 1985(3). Specifically, Plaintiffs claim that Defendants violated their (1) Fourth Amendment rights by standing on the Plaintiffs front lawn and visually inspecting their bushes, (<u>Id.</u> ¶ 100); (2) Equal Protection rights under the Fourteenth Amendment by selectively enforcing a Notice of Violation against the Plaintiffs but not against six other similarly situated neighbors, (<u>Id.</u> ¶¶ 96–99, 130, 132); (3) Due Process rights under the Fourteenth Amendment by not enforcing the Town Code against Fields and forcing the Plaintiffs to spend time and money to respond to the Notice of Violation, (<u>Id.</u> ¶ 99); and (4) Fifth Amendment right under the takings clause by renewing Fields' rental permit and thus

causing the Plaintiffs' property value to decline, (Id. ¶¶ 68–70.) Additionally, Plaintiffs assert state law claims in battery, property damage, and negligence/harassment. (Compl. ¶¶ 103–10.)

DISCUSSION

I. Defendant's Motion To Dismiss Pursuant To 12(b)(5)

    A. Standard Of Review Under 12(b)(5).

When a defendant moves to dismiss the complaint under Rules 12(b)(5) and 12(b)(6), the court must address the issue of proper service before the alleged failure to state a claim. Herzner v. U.S. Postal Serv., No. 05-CV-2371, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007). The defendant's motion must assert more than a general statement that service was inadequate, id., but plaintiff bears the burden to establish proper service. Id.

The Federal Rules of Civil Procedure enable the plaintiff to serve the summons according to state law. FED. R. CIV. P. 4(e)(1). Plaintiff can either use the state law where the district court sits or the state law where the defendant is served. Id. Since this Court sits in New York and the Defendants were all served in New York, the Plaintiff was permitted to serve the Summons according to New York state laws.

Pursuant to N.Y.C.P.L.R. 308(2), service of process on an individual is sufficient where the summons is left with a "person of suitable age and discretion at the actual place of

6

business" and mailing a copy to the same. N.Y.C.P.L.R. 308(6) states that "'actual place of business' shall include any location that the defendant, through regular solicitation or advertisement has held out as its place of business." Where service is insufficient, the defendant may move to dismiss the complaint pursuant to Rule 12(b)(5). FED. R. CIV. P. 12(b)(5). In fact, Rule 4(m) requires the court to "dismiss the action without prejudice" against the defendant under these circumstances. FED. R. CIV. P. 4(m).

Service on a town board or town supervisor is sufficient where the pleadings are left with the town clerk. See Contento v. Veteran, No. 80-CV-5903, 1981 U.S. Dist. LEXIS 13478, at *3 (S.D.N.Y. July 13, 1981) (finding that serving the town clerk on behalf of town board members and the town supervisor in their personal capacities was only insufficient because the plaintiff did not mail a copy to the defendant after personal service).

B.  The Individual Town Defendants Were properly Served At Their "Actual Place Of Business" Because The Town Clerk And Defendants All Work In Town Hall.

The Individual Town Defendants argue that service on the Town Clerk was insufficient because the Town Clerk's office is not their "actual place of business." (Individual Town Defs.' Mem. in Supp. 4.) The Court disagrees, and finds that service was sufficient for all Defendants except Robert Cicale,

who no longer works for the Town.  Plaintiffs state that the
Town Clerk and the Defendants all work in Town Hall.  (Pls.'
Opp'n 6.)  Although Defendants may work in a different office
than the Town Clerk, their "actual place of business" is in the
same building.  Therefore, the Individual Town Defendants were
properly served.  On the other hand, Robert Cicale was not
served at his "actual place of business" because, at the time of
service, he was no longer a town attorney.  Accordingly,
pursuant to Rule 12(b)(5), Cicale should be DISMISSED from this
action.

## II.  Defendants' Motion To Dismiss Pursuant To 12(b)(6)

### A.  Pleading Standard

The plaintiff must plead "a short and plain statement
of the claim [demonstrating that he is entitled to] relief."
FED. R. CIV. P. 8(a)(2).  The purpose of this requirement is to
put the defendant on "fair notice" of the plaintiff's claim.
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 27 S. Ct. 1955,
1964, 167 L. Ed. 2d 929 (2007).  To survive a 12(b)(6) motion to
dismiss, specific factual details are not required.  Id.  The
plaintiff must simply demonstrate that the alleged claims are
plausible and more than speculative.  Id.  "[A] formulaic
recitation of a cause of action's elements" is inadequate.  Id.

When deciding a 12(b)(6) motion to dismiss, the court
must assume that the allegations in the complaint are true.

Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002);

G.I. Home Developing Corp. v. Weis, No. 07-CV-4115, 2009 U.S.

Dist. LEXIS 29345, at *8 (E.D.N.Y. Mar. 31, 2009).  In addition

to the complaint, the court may consider any documents attached

to the complaint or incorporated by reference.  Chambers, 282

F.3d at 152.  All reasonable inferences should be drawn in favor

of the plaintiff.  Id.

B.    Redundant Claims

Where a town department is merely "an administrative

arm," and thus lacks a separate legal identity from the

municipality, a claim against both the town and the department

is redundant.  Carthew v. County of Suffolk, No 07-CV-4209, 2010

U.S. Dist. LEXIS 44384, at *12 (E.D.N.Y. May 6, 2010).  If there

is a redundancy, the "arm" of the municipality is usually

dismissed and the lawsuit continues against the municipality.

Id.  For example, a court should dismiss Town Board Members from

a lawsuit where both the town and its board members are named in

their official capacities.  See Castanza v. Town of Brookhaven,

No. 06-CV-6654, 2010 U.S. Dist. LEXIS 27058, at *8 (E.D.N.Y.

Mar. 22, 2010); Rini v. Zwirn, 886 F. Supp. 270, 281 (E.D.N.Y.

1995) (finding that any claims against town employees are

redundant to claims brought against the town itself).

Here, Plaintiffs brought suit against the Town of

Islip, the Town Board, the Town Members in their official

capacities, and the Town of Islip Zoning Board of Appeals. The lawsuit against the Town of Islip is sufficient to encompass a lawsuit against any of its departments. See Rini, 886 F. Supp. at 271. Thus, Plaintiffs' claims against the Town Board, Town Members in their official capacities, and Town of Islip Zoning Board of Appeals are redundant and are DISMISSED.

C.    Fourth Amendment Claim

1.    Required Showing

The Fourth Amendment to the United States Constitution protects "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. While this usually requires searches to be conducted with probable cause or a warrant, some searches may be performed without either. Bd. of Educ. v. Earls, 536 U.S. 822, 828, 122 S. Ct. 2559, 2564, 153 L. Ed. 2d 735, 743 (2002). All warrantless suspicionless searches, however, must be reasonable. Id. This means that the legitimate government interest must outweigh the intrusion of privacy. Id.

Mere "visual observation[s]," however, are not searches at all. Kyllo v. United States, 533 U.S. 27, 32, 121 S. Ct. 2038, 2042, 150 L. Ed. 2d 94, 101 (2001). In other words, the Fourth Amendment does not protect what a person chooses to expose to the public view. United States v. Fields,

113 F.3d 313, 321 (2d Cir. 1997) ("[P]olice are free to observe whatever may be seen from a place they are entitled to be."). For instance, a police officer's visual inspection of a home from a public street is not a search. Beganskas v. Town of Babylon, Nos. 03-CV-0287, 04-CV-5693, 2006 WL 2689611, at *2 (E.D.N.Y. Sept. 19, 2006). Similarly, a visual inspection of inside a multi-family apartment dwelling from a side yard is not a search. Fields, 113 F.3d at 321. Additionally, the intrusion of privacy is minimal when the searched item is open to the public. Palmieri, 392 F.3d at 84. For example, there is no expectation of privacy along a front walkway and driveway. Beganskas, 2006 WL 2689611, at *2 (finding no expectation of privacy along the path a visitor would take). Fields, 113 F.3d at 321 (finding no protection for anything a person can see inside a house from the side yard).

Moreover, municipal searches are reasonable because there is a strong government interest in public health and safety. Beganskas, 2006 WL 2689611, at *2 (finding that municipal searches "lack traditional safeguards which the fourth amendment guarantees to individuals"). This interest is so strong that municipalities do not need a warrant or probable cause to search inside a home for city housing code violations. Camara v. Mun. Court, 387 U.S. 523, 526, 533 87 S. Ct. 1727, 1729, 1733, 18 L. Ed. 2d 930 (1967). Even if municipal

employees trespass, the search is still reasonable.  <u>Palmieri v.</u>
<u>Lynch</u>, 392 F.3d 73, 84 (2d Cir. 2004) (finding no fourth
amendment violation where the government, at most, trespassed);
<u>Fields</u>, 113 F.3d at 322.

       2.    <u>Plaintiffs Do Not Have A Fourth Amendment Claim</u>
             <u>Because The Visual Inspection Of The Bushes Was</u>
             <u>Not A "Search."  Nonetheless, There Was A Strong</u>
             <u>Government Interest In Protecting The Public From</u>
             <u>A Sight Obstruction And A Low Expectation Of</u>
             <u>Privacy On Plaintiffs' Front Lawn.</u>

Plaintiffs allege that Fields and an unknown town
employee violated their Fourth Amendment rights by trespassing
onto Plaintiffs' land to inspect a potential sight obstruction.
(Pl.'s Opp'n 21.)  This claim is baseless.  A mere visual
inspection of Plaintiffs' bushes is not a "search" under the
Fourth Amendment.  Defendants merely stepped onto the
Plaintiffs' property and observed the shrubs on the front lawn.
The bushes could be seen from the street.  In fact, the Town was
inspecting the bushes because they were potential sight
obstructions.  Therefore, the bushes were in public view and
thus Defendants did not conduct a search under the Fourth
Amendment.  Moreover, the Plaintiffs had a minimal expectation
of privacy on their front lawn.  Anything that the Town
inspected was entirely visible to the public and nothing was
seized.  The search is still reasonable even though Fields and

another town employee allegedly trespassed. See Palmieri, 392 F.3d at 84.

Even if the visual inspection of Plaintiffs' bushes did constitute a search, the search was conducted reasonably. The Supreme Court has stated that municipal searches are reasonable by their nature. See Camara, 387 U.S. at 526, 533 87 S. Ct. at 1729, 1733, 18 L. Ed. 2d 930. Additionally, the search was prompted by a sight obstruction complaint. (Compl. ¶ 100.) A public safety issue is a legitimate government interest. See Beganskas, 2006 WL 2689611, at *2. Therefore, the Plaintiffs' Fourth Amendment claim is DISMISSED.

D.    Equal Protection Claim

Under the Equal Protection Clause, the plaintiff does not need to be a member of a class, but can bring a "class of one action." Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1064, 145 L. Ed. 2d 1060 (2000) (per curiam) (finding that class of one actions are allowed where the plaintiff does not claim to be a member of a class or group). While the Supreme Court has allowed "class of one actions" against a municipality regarding the enforcement of property laws, Alfaro v. Labrador, 06-CV-1470, 2009 Dist. LEXIS 72532, at *27 (E.D.N.Y. Aug. 14, 2009), such a claim is not available where the plaintiffs are challenging a discretionary action. DePietro v. City of N.Y., No. 09-CV-0932, 2010 U.S. Dist. LEXIS 8598, at *32

13

(E.D.N.Y. Jan. 29, 2010); <u>Alfaro</u>, 2009 Dist. LEXIS 72532, at *27 (noting that certain "selective enforcement" decisions do not give rise to a "class of one" claim). Zoning law enforcement is a "classic example" of discretionary behavior that does not give rise to a "class of one" claim. <u>Catcove Corp. v. Heaney</u>, 685 F. Supp. 2d 328, 8 (E.D.N.Y. 2010).

In this case, Plaintiffs allege that they received a Notice of Violation for paving their driveway too close to the property line, but six out of seven neighbors also paved their driveways close to the property line and never received a similar Notice. (Compl. ¶¶ 130—32). The Zoning Board has discretion in deciding whether to issue a Notice of Violation. <u>See</u> <u>Catcove</u>, 685 F. Supp 2d. at 8 (finding that New York gives broad authority to enforce zoning laws). Such decisions are not vulnerable to an Equal Protection claim. Therefore, all Equal Protection Claims are DISMISSED.

E.   <u>Due Process Claim</u>

1.   <u>Required Showing</u>

To establish a due process claim, whether procedural or substantive, the plaintiff must demonstrate a valid property interest within the meaning of the Fourteenth Amendment. <u>Ruston v. Town Bd.</u>, No. 06-CV-0927, 2008 WL 5423038, at *5 (N.D.N.Y. Dec. 24, 2008). In other words, the plaintiff must show a "legitimate claim of entitlement." <u>Bd. of Regents v. Roth</u>, 408

U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972);

Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996). State law

determines whether such an entitlement exists. Roth, 408 U.S.

at 577, 92 S. Ct. at 2709, 33 L. Ed. 2d at 561.

When asserting a due process claim against a

governmental entity, the plaintiff must show that the government

did not possess discretion over the alleged deprivation.

Crowley, 76 F.3d at 52 (refusing to recognize a due process

right in the denial of a zoning variance). The decision whether

to enforce a law is discretionary and cannot support a due

process claim. Deshaney v. Winnebago County Dep't of Soc.

Servs., 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed. 2d.

249, 258-59 (1989) (finding there is no "guarantee of certain

minimal levels of safety and security"); Gagliardi v. Vill. of

Pawling, 18 F.3d 188, 192 (2d Cir. 1994). Thus, there is no due

process right in enforcing a law against another person. Id. at

192 (refusing to find a property right in the enforcement of

zoning laws against a neighbor's property).

Also, courts have refused to recognize a property

interest in time or money spent defending a violation. All Aire

Conditioning, Inc. v. City of N.Y., 979 F. Supp 1010, 1016

(S.D.N.Y. 1997). The defendant's voluntary decision to defend

against charges evidences the defendant's voluntary decision to

pay the costs. Id. ("The choice whether to defend against those

charges were theirs . . . . [T]hey voluntarily chose to incur the expense involved."). Especially when the decision was made in the defendant's favor, there is no property interest in the cost of obtaining success. <u>De Asis v. N.Y. City Police Dep't</u>, No. 07-CV-3904, 2008 U.S. Dist. LEXIS 63798, at *14 (E.D.N.Y. Aug. 18, 2008). To hold otherwise would allow any defendant who succeeded against the government to countersue for a due process deprivation. <u>All Aire Conditioning</u>, 979 F. Supp. at 1015-16.

  2. <u>Plaintiffs Do Not Have A Legitimate Entitlement In The Enforcement Of The Town Code Against Their Neighbor's Property Or In Time Or Money Spent Answering A Notice Of Violation.</u>

First, Plaintiffs allege that they have a legitimate entitlement to enforce the Town Code against their neighbor, who allegedly has an illegal renting permit. (Pls.' Opp'n 10.) This is not a recognized property or liberty interest. <u>See Gagliardi</u>, 18 F. 3d at 192. Plaintiffs are not entitled to enforce the Town Code against their neighbors. <u>See id.</u> The Town Board has broad discretion regarding when to enforce the Town Code. <u>See Deshaney</u>, 489 U.S. at 195, 109 S. Ct. at 1003, 103 L. Ed. 2d. at 258-59. Plaintiffs, therefore, have no due process claim, and such claims are DISMISSED.

Second, Plaintiffs claim to have a liberty or property interest to be free from receiving senseless Notices of Violation. (Compl. ¶ 99.) Plaintiffs claim they spent time and

money answering the Notice, and were therefore deprived of due process rights. (Id.) Time and money, however, are not recognized liberty or property rights in this context. See All Aire Conditioning, 979 F. Supp at 1016. Moreover, Plaintiffs did not suffer any other harm. After Plaintiffs answered the Notice of Violation, the Town resolved the issue in their favor. Thus, by issuing the Notice of Violation, the Town did not deprive Plaintiffs of their due process rights. All due process claims are therefore DISMISSED.

   F.   Fifth Amendment Claim

      1.   Required Showing

      The Fifth Amendment protects citizens against the taking of "private property . . . for public use" without just compensation. See U.S. Const. amend IV. A diminution in property value, however, does not amount to a Fifth Amendment taking. Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 131, 98 S. Ct. 2646; 2663, 57 L. Ed. 2d 631, 652-53 (1978); Sag Harbor Port Assocs. v. Vill. of Sag Harbor, 21 F. Supp 2d 179, 186 (E.D.N.Y. 1998) ("A demonstrated decrease in the value of one's property is insufficient to constitute a taking."); Howell v. Apple, Inc., No. 89-CV-1574, 1991 WL 66366, at *2 (E.D.N.Y. Apr. 24, 1991). The plaintiff must allege that "the State has deprived it of 'all reasonable uses' of its land." Sag Harbor,

21 F. Supp 2d at 186 (quoting Dean Tarry Corp. v. Friedlander, 650 F. Supp. 1544, 1550 (S.D.N.Y. 1987)).

2. Plaintiffs Cannot Establish A Fifth Amendment Violation.

In this case, Plaintiffs allege that Fields and the Town conspired and violated their Fifth Amendment rights by allegedly allowing illegal renters on Fields' property. (Compl. ¶¶ 68-70.) Plaintiffs claim this decreased the value of their property, and is thus a taking under the Fifth Amendment. (Id.) Other than mere diminution in value, however, Plaintiffs do not claim any other loss, and a mere decrease in value is insufficient to warrant a Fifth Amendment claim.[2] Penn Cent., 438 U.S. at 131, 98 S. Ct. at 2663, 57 L. Ed. 2d at 652-53. Therefore, the Court dismisses all Fifth Amendment claims.

G. 1983 Claim

1. 1983 Claim Against The Town

To survive a § 1983 claim against a municipality, the plaintiff must show that the town was personally involved in the constitutional deprivation. Younger v. City of N.Y., 480 F. Supp. 2d 723, 731 (S.D.N.Y. 2007). Respondeat superior is insufficient to establish 1983 liability against a town. Id. The plaintiff must allege that "the constitutional deprivation was undertaken pursuant to 'a policy[,] statement, ordinance,

---

[2] Moreover, even if these allegations could be a basis for a Fifth Amendment violation, proving the hypothetical diminution in value and its causation would be nearly impossible.

18

regulation, or decision officially adopted and promulgated by that body's officers[,] . . . or pursuant to a governmental 'custom.'" <u>Leland v. Moran</u>, 100 F. Supp 2d 140, 145 (N.D.N.Y. 2000). If the plaintiffs do not allege a particular policy or custom, the complaint should be dismissed. <u>Id.</u> at 145 (finding that the plaintiffs failed to state that the municipality had a policy or custom of ignoring zoning complaints).

Here, Plaintiffs argue that the Town ignored their complaints concerning Fields, and particularly regarding her permit. (Compl. ¶ 123.) Plaintiffs further claim that the Town trespassed onto their property and conducted an illegal search under the Fourth Amendment. (Compl. ¶ 100.) The Plaintiffs allege that this is evidence of two town policies: (1) "a policy 'of retaliating against the Plaintiffs for standing up to Assemblywoman Fields'" and (2) a policy "of bowing down to [Assemblywoman Fields] to the detriment of the Plaintiffs." (Pls.' Opp'n 19.) Plaintiffs, however, do not allege a valid 1983 claim.

Although Plaintiffs assert that the Town "retaliate[d] against them for standing up to Assemblywoman Fields," there is no evidence of such a town policy. (<u>Id.</u>) In fact, Plaintiffs state that several town employees listened to their complaints. Nolan told Plaintiffs that Fields would be "treated 'like anyone else'" and that "[Plaintiffs] ha[d] a right to use the [bus

stop].” (Compl. ¶¶ 114, 117.) Additionally, Clifton told Plaintiffs to “hang in there” and that they had *every* right to use the public right of way.” (Id. ¶¶ 118—19 (emphasis added).) Only one town employee failed to respond to Plaintiffs' letter, (id. ¶ 123), but ignoring one of Plaintiffs' complaints is insufficient to prove that the Town had a “policy” of “retaliating against Plaintiffs.”

Additionally, there is no evidence of a town policy “of bowing down to [Assemblywoman Fields] to the detriment of the Plaintiffs.” Again, Plaintiffs only allege that one town employee failed to respond to their letter. (Id.) One single instance is inadequate to demonstrate a town policy. Furthermore, the Complaint alleges that Fields and an unnamed town employee trespassed onto Plaintiffs' front lawn to look at their bushes, constituting an illegal “search.” (Pls.’ Opp’n 21.) But this was not an illegal search for purposes of the Constituion; even if it was, the bushes were only “searched” once. Plaintiffs do not claim that the Town searched their property multiple times or that the Town had a general policy of conducting illegal searches. Instead, Plaintiffs only plead this one circumstance, which does not amount to a constitutional violation. See supra Part II.C.2. Thus, Plaintiffs have failed to establish a policy or custom and these claims against the Town are DISMISSED.

2.   Individual Town Defendants In Their Personal
     Capacity

     a.   Required Showing

Any legislator being sued through 1983 is absolutely immune from individual liability if the legislator's official conduct brought about the alleged constitutional violation. Goldberg v. Rocky Hill, 973 F.2d 70, 73 (2d Cir. 1992) (recognizing that absolute immunity is only available to defendants who are sued for their official conduct); Affrunti v. Zwirn, 892 F. Supp 451, 456, 460 (E.D.N.Y. 1995). Such immunity extends to local legislators and local town zoning boards. Id. (holding that a local town board of zoning was entitled to absolute immunity regarding a 1983 claim); see also United States v. City of Yonkers, 856 F.2d 444, 456 (2d Cir. 1988), rev'd on other grounds; Orange Lake Assocs. v. Kirkpatrick, 21 F. 3d 1214, 1224 (2d Cir. 1994) ("[L]egislative immunity . . . extends to members of Town Boards within New York State.").

     b.   The Individual Town Defendants Are
          Absolutely Immune From A 1983 Suit
          In Their Personal Capacities.

Plaintiffs allege that the Individual Town Defendants ignored Plaintiffs complaints regarding Fields' permit and that some unknown town employee conducted an illegal search of the Plaintiffs' property. The decision to enforce a Section of a Town Code or renew a permit, however, pertains directly to the

Board Members' official conduct. Similarly, inspecting bushes to determine whether they are a sight obstruction is part of a town employee's official duties. In addition, there are no allegations of any kind against Christopher D. Bodkin, Steven J. Flotteron, John H. Edwards, Gene Parrington, William Rowley, Jr., or George Schimph in any capacity. Therefore, as the Individual Town Defendants have already been dismissed in their official capacity, see supra Section II.B.2., they are now also absolutely immune from a 1983 lawsuit against their personal capacity. Thus, the 1983 claims against these Defendants must be DISMISSED.

> H.   Failure To Supervise/Train

>>     1.   Required Showing

Under 1983, a municipality may also be held liable for failing to train its own employees. Leland, 100 F. Supp. 2d at 145. To establish a claim, plaintiffs "must prove . . . (1) an official policy or custom . . . (2) caused the plaintiff to be subjected to (3) a denial of constitutional rights." Wray v. City of N.Y., 490 F.3d 189, 195 (2d Cir. 2007).

In proving a policy or custom, the plaintiff must demonstrate that the failure to train amounted to "deliberate indifference. This requires a plaintiff to show that (1) the town knew its employees would face the specific situation that gave rise to the claim, Walker v. City of N.Y., 974 F.2d 293,

297 (2d Cir. 1992), (2) either the training would have enhanced the town employee's ability to make a certain decision in that specific situation or that there is a "history of mishandling such situations," Petruso v. Schlaefer, 474 F. Supp. 2d 430, 443 (E.D.N.Y. 2007); Leland, 100 F. Supp. 2d at 145 (holding that the municipality must have made "a 'deliberate' or 'conscious' choice"), and (3) making this decision incorrectly would often deprive citizens of their constitutional rights. Leland, 100 F. Supp. 2d at 145.

A complaint cannot survive a motion to dismiss if it merely recounts one particular situation and simply states that the Town failed to train the zoning board for this one particular instance. Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) (recognizing that the complaint must allege a policy or custom); Petruso, 474 F. Supp. 2d at 443. The plaintiff must allege multiple occurrences in the complaint. Id. ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.").

### 2. Plaintiffs' Failure To Train Claim Fails

Plaintiffs allege that they were served with a "bogus" Notice of Violation and that Fields used her influence to

eliminate a bus stop.  (Compl. ¶¶ 96, 101.)  This is inadequate to establish a failure to train claim.

Plaintiffs failed to establish that the Notice of Violation deprived them of any Constitutional rights.  At most, the Plaintiffs were forced to pay money to answer the Notice of Violation, which is not a cognizably recognized property interest.  See supra Part II.E.2.  Furthermore, as soon as Plaintiffs answered the Notice of Violation, the issue was resolved in their favor.  (Compl. ¶ 133.)

Additionally, Plaintiffs argue that Fields used her influence to move the bus stop, but they never allege any deliberate choice by the Town in the way of a custom or policy.  (Id. ¶ 101.)  The allegation only mentions Fields.  Furthermore, even if the Town did make a deliberate choice, pleading one circumstance is inadequate to show that a municipality has an alleged custom or policy of using its influence to move bus stops.  Therefore, the 1983 failure to train claim is DISMISSED.

I.   1985(3) Claims

A 1985 claim is narrower than a 1983 claim, as a 1985 claim requires the plaintiff allege either racial, class based, or invidious discrimination.  Id.  Where the plaintiff is not a member of a class or fails to allege that he is discriminated against because of race or some other invidious categorization, the 1985(3) action must fail.  Ruston, 2008 WL 5423038, at *2.

A race or class based animus is crucial to the survival of such a claim. <u>Gagliardi</u>, 18 F.3d at 194 (finding the plaintiff must show "racial or class-based animus").

In this case, Plaintiffs allege that they made several complaints to the Town about Fields, that the Town stated that they would treat Fields "like anyone else," (Compl. ¶ 114.) but never "step[ped] in." (<u>Id.</u> ¶ 118.) Additionally, the Town issued a Notice of Violation to Plaintiffs regarding their driveway, while Plaintiffs argue that similar neighbors with similar driveways never received a Notice. (<u>Id.</u> ¶ 129-32.) Plaintiffs do not, however, allege any racial, class-based or invidious discrimination. Instead, the Plaintiffs vaguely assert that they are being discriminated against because of a personal dispute between the Plaintiffs and Fields. In other words, Plaintiffs' claims based on § 1985 are completely frivolous. Therefore, all 1985 claims are DISMISSED.

J.    <u>State Law Claims</u>

In deciding whether to retain jurisdiction over state law claims, federal courts "should balance the values of judicial economy, convenience, fairness, and comity." <u>Klein & Co. Furnitures, Inc. v. Bd. of Trade</u>, 464 F.3d 255, 262 (2d Cir. 2007). Where all federal claims have been dismissed at an early stage, federal courts should not continue to exercise jurisdiction over state law claims. <u>Id.</u> In this situation, the

above balancing test will usually result in declining jurisdiction. <u>Kolari v. N.Y. Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006). If, on the other hand, the state law claims involve an important issue of federal policy, federal courts may retain jurisdiction. <u>Klein & Co. Furnitures</u>, 464 F.3d at 262.

Here, all federal claims against Defendants have been dismissed and there are no issues of federal policy that require the Court to retain jurisdiction over the state claims. Therefore, the Court DECLINES jurisdiction over all state law claims.[3]

III. <u>Motion For Leave To Amend</u>

    A. <u>Standard</u>

Rule 15(a) of the Federal Rules of Civil Procedure states that "the court should freely give leave when justice so requires." F<span style="font-variant:small-caps">ED</span> R. C<span style="font-variant:small-caps">IV</span>. P. 15(a). The decision is within the discretion of the court, but the court should consider whether there was any "undue delay, bad faith or dilatory motive on the part of the movant . . . , [or] undue prejudice to the opposing party." <u>Forman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

---

[3] While this Court will not rule on the merits of Plaintiffs' state law claims, the Court urges Plaintiffs and their counsel to become intimately familiar with state law sanctions provisions before commencing a future action in state court.

The court may deny leave to amend if such relief is likely to be futile. Ruffolo v. Opphenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). For example, if a claim could not survive a 12(b)(6) motion to dismiss, a court is not abusing its discretion by denying leave to amend. Dougherty v. N. Hempstead Bd. of Zoning, 282 F.3d 83, 88 (2d Cir. 2002). In fact, such grounds render the remedy futile. Id. Moreover, a claim can only be dismissed if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Okoi v. El Al Isr. Airlines, No. 05-CV-5370, 2006 WL 3501224, at *3 (E.D.N.Y. Dec. 4, 2006).

The court may also deny leave to amend where the Plaintiffs fails to submit a proposed pleading and does not explain why. La Barbera v. Ferran Enters., Inc., No. 05-CV-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009). "Any motion to amend must attach the proposed amended complaint specifying the new claims." Ackermann v. N.Y. City Dep't of Info. Tech. & Commc'ns, No. 09-CV-2436, 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010).

B.  Amendment Would Be Futile

In this case, there is no evidence of undue delay, bad faith, dilatory motive, or prejudice to Defendant. However, granting leave to amend would be futile because the Amended

Complaint, even with further amendments could not survive a 12(b)(6) motion.

In their Opposition, Plaintiffs claim they were deprived of the due process right to "quietly" enjoy their property because Defendants allowed Fields to allegedly obtain an illegal permit. (Pls.' Opp'n 9.) These tenants allegedly caused excessive noise and harassed Plaintiffs. (Compl. ¶ 78.) Plaintiffs list multiple Town Code sections that Defendants have allegedly violated. But even if Defendants violated every town code listed, Plaintiffs' claims still fail. Simply put, rephrasing the baseless charges does not give rise to a Constitutional violation.

Plaintiffs also expanded on their 1983 claim in their Opposition by alleging specific town policies of "retaliating against Plaintiffs" and "bowing down to Fields to the detriment of Plaintiffs." (Pls.' Opp'n 19.) Nonetheless, Plaintiffs can only point to one circumstance where Defendants ignored their complaint and one circumstance where the Town "searched" their property. This is insufficient to establish a custom or policy.

Plaintiffs admit that there is no racial discrimination here, but insist that the Plaintiffs have been invidiously discriminated against because such "discrimination" was "unpleasant" or "objectionable." (Id. at 15.) Plaintiffs do not cite to any precedent supporting this interpretation.

(Id.)  No matter how unpleasant Plaintiffs found Defendants'
actions, § 1985(3) still requires race or class based
discrimination; meritless arguments to the contrary are plainly
sanctionable.

Finally, Plaintiffs argue that the alleged Fourth
Amendment search was not conducted with any "immediacy" and
therefore Defendants needed to obtain a warrant.  (Id. at 21.)
Plaintiffs also argue that they had a reasonable expectation of
privacy on their front lawn.  (Id.)  But for the aforementioned
reasons, these claims are meritless, and Plaintiffs allege no
new facts that would give rise to a Fourth Amendment claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion to
Dismiss pursuant to 12(b)(5) and 4(m) is GRANTED IN PART and
DENIED IN PART.  Additionally, Defendants' Motion to Dismiss
pursuant to Rule 12(b)(6) is GRANTED in its entirety, and
Plaintiffs' motion for leave to amend pursuant to Rule 15(a) is
DENIED.  Having found that the Amended Complaint is DISMISSED
against all Defendants, the Court directs the Clerk of the Court
to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     June  30 , 2010
           Central Islip, New York